**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 29 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

RICK PETER BECK,

        Plaintiff-Appellant,

v.

CITY OF MUSKOGEE POLICE
DEPARTMENT; COUNTY OF
MUSKOGEE SHERIFF'S OFFICE;
MUSKOGEE OFFICE OF THE
DISTRICT ATTORNEY,

        Defendants-Appellees.

No. 98-7171

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 98-CV-327-S)**

---

Submitted on the briefs:

Rick Peter Beck, pro se.

Danita G. Engleman, Assistant District Attorney, Muskogee, Oklahoma, for
Defendants-Appellees County of Muskogee Sheriff's Office and Muskogee Office
of the District Attorney.

Betty Outhier Williams, J. Heath Lofton of Gage & Williams Law Firm,
Muskogee, Oklahoma, for Defendant-Appellee City of Muskogee.

---

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

**TACHA** , Circuit Judge.

Plaintiff Rick Peter Beck brought this action asserting federal civil rights claims under 42 U.S.C. § 1983 and various state law claims. The district court concluded that his federal claims were premature under *Heck v. Humphrey* , 512 U.S. 477, 487 (1994), and that the state law claims were barred by the statute of limitations. It accordingly dismissed the action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Beck appeals. [1]

Beck's claims arise out of his arrest on a rape charge by City of Muskogee police on October 1, 1995. The rape charge was dismissed on June 19, 1996. However, based at least in part on the alleged rape victim's testimony, a state court revoked his probation and accelerated his sentence on a previous, unrelated conviction. [2] Beck is apparently now serving that sentence. On June 5, 1998,

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2]    It is unclear from the record exactly what the procedural vehicle was for incarcerating Beck under the state conviction. The record alternately describes it as revoking his probation or accelerating his sentence. It appears that the sentence acceleration was part of his probation revocation, and for simplicity, we will generally refer to this action as a probation revocation.

(continued...)

Beck filed this action in state court. Defendant Muskogee Police Department removed the case to federal court, and defendants moved to dismiss on the basis of statutes of limitations and immunity. The district court noted that the rape charges against Beck had been dismissed but that his sentence on the other conviction had been accelerated. Apparently referring to this accelerated sentence, the district court rejected defendants' statute of limitations defense to the federal claims on the basis that, because "plaintiff's conviction or sentence has not been . . . invalidated" as it concluded *Heck* required, these claims had not yet accrued. *See* District Court's November 19, 1998 order at 3. The court held that the Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-72, applied to

---

[2](...continued)
The state's application to revoke probation in another case, No. CF-94-80, was consolidated with the preliminary hearing in the rape case. When later denying Beck's motion to expunge his rape charge, the state court explained that "there was evidence substantiating the prosecution for felonies in [the rape case] and in two other cases . . . , that they were serious felonies, and that they were committed while Mr. Beck was on probation. Accordingly, using in part the testimony in [the rape case], this Court accelerated Mr. Beck's deferred adjudications in CF-94-80 and sentenced him to ten years in prison." R. Vol. I, Doc. 15, attachment (Order Denying Motion for Expungement) at 2.

Beck has unsuccessfully tried to collaterally challenge his probation revocation. The district court stated in its order that it denied his habeas corpus petition regarding this matter on August 28, 1998, though the court did not indicate the basis for its denial. Beck stated in his appellate brief that it was denied for failure to exhaust state remedies. There is no other information regarding whether he has since attempted to challenge his probation revocation in state court.

-3-

the state law claims against defendants, since they are government entities, and that under the applicable statute of limitations, the claims were time-barred. It then dismissed the action under Rule 12(b)(6).

We review the district court's dismissal of a cause of action under Rule 12(b)(6) de novo. *See Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1490 (10th Cir. 1997). We will uphold a Rule 12(b)(6) dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997) (quotation omitted). We agree with the district court that the state law claims are untimely and that two of the federal claims--malicious prosecution and related *Brady* claims regarding his probation revocation--are premature under *Heck*. However, the other federal claims are not premature, although the statute of limitations has expired on most of them. Thus, for the reasons explained below, we affirm in part, reverse in part and remand the case to the district court for further proceedings.

**Federal Claims**

-4-

In *Heck*, the Supreme Court addressed the question of when a prisoner may bring a § 1983 claim relating to his or her conviction or sentence. The Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted). Thus, for § 1983 claims necessarily challenging the validity of a conviction or sentence, *Heck* delays the rise of the cause of action until the conviction or sentence has been invalidated. Because the cause of action does not accrue until such time, the applicable statute of limitations does not begin to run until the same time. *See Heck*, 512 U.S. at 489-90.

*Heck* dealt with the timing of a § 1983 claim seeking monetary damages in light of the plaintiff prisoner's outstanding conviction and sentence. In the present case, we are not dealing with a conviction, but instead are faced with a dismissed charge and a probation revocation or sentence acceleration. This circuit has already extended *Heck* to situations involving probation revocation. *See Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (§ 1983 claims

challenging revocation of parole or probation precluded under *Heck* until revocation invalidated). Other circuits have also applied it to pending and dismissed charges, *see Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999); *Washington v. Summerville*, 127 F.3d 552, 555-56 (7th Cir. 1997), cert. denied, 118 S. Ct. 1515 (1998); *Smith v. Holtz*, 87 F.3d 108, 112-13 (3d Cir. 1996), and we agree that *Heck* should apply to such situations when the concerns underlying *Heck* exist. Thus, *Heck* precludes § 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges. Such claims arise at the time the charges are dismissed. *See Covington*, 171 F.3d at 124; *Uboh v. Reno*, 141 F.3d 1000, 1006 (11th Cir. 1998); *Smith v. Holtz*, 87 F.3d at 113.

We agree with the district court that, depending on their substance, *Heck* may apply to Beck's claims, making them premature. We disagree, however, with its blanket application of *Heck* to all of Beck's claims. *Heck* applies only to those claims that would necessarily imply the invalidity of any conviction that might have resulted from prosecution of the dismissed rape charge or the invalidity of his probation revocation. Not all of them do. Each of Beck's claims must be assessed individually to determine whether it has yet matured, and if so, when it matured for purposes of applying the statute of limitations.

State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims, *see Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Arnold v. Duchesne County*, 26 F.3d 982, 985 (10th Cir. 1994), but federal law governs the time of accrual of § 1983 claims, *see Smith v. City of Enid ex rel. Enid County Comm'rs*, 149 F.3d 1151, 1154 (10th Cir. 1998). In this situation, Oklahoma's two-year statute applies to Beck's claims. *See Meade v. Grubbs*, 841 F.2d 1512, 1522-24 (10th Cir. 1988). "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid*, 149 F.3d at 1154 (quotation and citations omitted).

Reading Beck's pro se complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), we conclude he raises the following claims: illegal arrest and illegal search and seizure of his vehicle in violation of the Fourth and Fourteenth Amendments; conversion of his vehicle in violation of the due process clause of the Fourteenth Amendment; destruction of and/or failure to disclose exculpatory evidence also in violation of due process; and malicious prosecution in violation of the Fourth and Fourteenth Amendments.

Beck's illegal arrest and illegal search and seizure claims stem from his arrest by Muskogee City police, search of his property, and seizure of his vehicle

on the evening and morning of October 1-2, 1995. He contends that the police did not have probable cause to arrest him and that they lacked authority because they arrested him outside their jurisdiction. (He was eventually turned over to the Muskogee County Sheriff's Office.) It is not clear what was allegedly illegal about the search and seizure. Regardless, both of these claims are barred by the statute of limitations.

"Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991). Beck has provided no allegation or information indicating that we should not apply this presumption here. Although he contends he did not become aware of what ultimately happened to his vehicle until sometime after it was seized, that is relevant only to his conversion claim and not to his search and seizure claim.

Moreover, *Heck* does not affect the time these claims arose because ultimate success on them would not necessarily question the validity of a conviction resulting from the rape charge or his probation revocation. *See, e.g.*, *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995). For claims of unreasonable searches, *Heck* itself explains why:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was

introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

512 U.S. at 487 n.7 (citations omitted).  [3]

Further, nothing in *Heck* changes the general rule that causes of action relating to an allegedly illegal arrest arise at the time of the arrest. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 182-83 (4th Cir. 1996). *Heck* did note an example of a logical exception to the general rule--when a plaintiff convicted of resisting arrest challenges the legality of the arrest. Such an action would be premature because it challenges one of the elements necessary to the conviction.

---

[3]    In *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995), the Sixth Circuit held that *Heck* did not exempt unreasonable search claims from the requirement that convictions be invalidated before the claims ripen, relying on this further explanation in *Heck*'s footnote 7:

> In order to recover compensatory damages, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Heck*, 512 U.S. at 487 n.7 (citation omitted). We do not agree that this statement undercuts the Court's earlier explanation in this same footnote that success on a claim for an unreasonable search would not necessarily imply the unlawfulness of the conviction. We read the Court's latter statement as only limiting the damages a plaintiff may recover in such a case--the damages cannot include those for being convicted and imprisoned, at least not until the conviction has been overturned. *See Gonzales v. Entress*, 133 F.3d 551, 553-54 (7th Cir. 1998)

*See Heck*, 512 U.S. at 486 n.6; *see also Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995); *Woods v. Candela*, 47 F.3d 545, 546 (2d Cir. 1995). [4]

Beck's challenge to his arrest would not implicate any of the elements of his rape charge or his probation revocation. The accrual of this claim was thus not affected by *Heck*. Beck's arrest and search and seizure claims therefore arose on October 1-2, 1995, when the allegedly illegal actions occurred. Because this was more than two years prior to his June 1998 filing of this action, the claims are barred by the statute of limitations.

Beck raises two other, somewhat inconsistent claims related to his seized vehicle, which is where the alleged rape occurred. After his vehicle was seized, he contends that he was told it was sent to the Oklahoma Bureau of

---

[4] Several cases have held that whether a plaintiff's illegal arrest claim is affected by *Heck* depends on whether evidence obtained as a product of the arrest is used at trial. *See Covington*, 171 F.3d at 123 ("[W]here the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence."); *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) ("[I]f he is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by *Heck*."). We generally disagree with the holdings in these cases because they run counter to *Heck*'s explanation that use of illegally obtained evidence does not, for a variety of reasons, necessarily imply an unlawful conviction. *See Heck*, 512 U.S. at 487 n.7. Moreover, we are not faced with the rare situation posited by *Covington* where all evidence was obtained as a result of an illegal arrest.

Investigations' forensic laboratory for examination. Instead of being sent to the forensic lab, however, the vehicle was sold, allegedly without notice to Beck, at a public auction by the towing service that removed it from Beck's property at the request of either the Muskogee police or sheriff. Beck contends that the results of an examination would have demonstrated his innocence--i.e., that no rape occurred in the vehicle. He contends that the failure to disclose this exculpatory evidence (assuming it exists), which is essentially a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), *see McMillian v. Johnson*, 88 F.3d 1554, 1567 & n.12 (11th Cir. 1996), both extended the time he was incarcerated before the rape charges were dropped and prevented him from disputing the alleged victim's testimony, which was the basis for his probation revocation. He also claims that defendants deprived him of his property without due process by selling his vehicle without notice.

Turning to the latter claim first, because the alleged denial of due process in selling his vehicle would not implicate the validity of any rape conviction or probation revocation, *Heck* does not apply. However, we cannot determine on the record before us when this claim arose because we cannot tell when Beck should have become aware that his rights had allegedly been violated. The vehicle was apparently sold in November 1995, but Beck contends that he was subsequently told it was at the forensic lab being inspected, and that he did not become aware it

-11-

had been sold until March 1997. We therefore must remand this claim for further proceedings to determine when this cause of action arose.

Beck's claims involving the alleged destruction or suppression of exculpatory evidence is closely related to, if not part of, his malicious prosecution claims. *See, e.g.*, *Heck*, 512 U.S. at 479, 484 (construing allegation of knowing destruction of exculpatory evidence as part of malicious prosecution claim). Beck asserts both claims with respect to both his rape charge and probation revocation, and they are based on the same alleged facts: the district attorney's threatening the alleged victim with jail if she recanted her initial testimony and the intentional suppression and destruction of exculpatory evidence. Moreover, the probation revocation hearing was combined with the preliminary hearing in the rape case, and the proceedings involved the same prosecutors and judge. Both malicious prosecution and *Brady* claims may implicate *Heck*. *See id.* at 489-90 (malicious prosecution); *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (*Brady*); *cf. Parris v. United States*, 45 F.3d 383, 384-85 (10th Cir. 1995) (*Brady* in context of claim under Federal Tort Claims Act). However, only the rape charge has been resolved in Beck's favor.

This case presents what we assume to be a fairly rare situation--factually identical claims involving related legal proceedings that, so far, have produced essentially contrary legal results as far as Beck is concerned. Thus, for *Heck*

-12-

purposes, the malicious prosecution/ *Brady* claims with respect to the dismissed rape charge are ripe; as they apply to the probation revocation, they are not. Although it might seem that Beck's claims should all be delayed, *see Heck*, 512 U.S. at 487 (noting claim premature if success will "demonstrate the invalidity of *any* outstanding criminal judgment against the plaintiff") (emphasis added), we conclude that the malicious prosecution/ *Brady* claims regarding the rape charge may proceed. *Heck* focuses on what a judgment in a plaintiff's favor would *necessarily* show. As explained in note 2 above, the state court relied on evidence relating to two other charged felonies in addition to the rape in revoking Beck's probation. Because the failure of one basis for revoking probation would not invalidate the revocation as long as there are other grounds supporting the revocation, *see McQueen v. State*, 740 P.2d 744, 745 (Okla. Ct. Crim. App. 1987), successful prosecution of the malicious prosecution/ *Brady* claims as they relate to the rape charge would not necessarily show that the probation revocation was unlawful. Moreover, because these claims did not arise until the rape charge was dismissed and Beck's complaint was filed less than two years later, they are not barred by the statute of limitations. [5]

---

[5] The claims as they relate to the probation revocation are, of course, precluded by *Heck* at this time. We note that while the district court dismissed all of Beck's claims under Rule 12(b)(6) without indicating whether or not the dismissal was with or without prejudice, dismissals pursuant to *Heck* are without

(continued...)

-13-

**State Law Claims**

Because defendants are political subdivisions of the state, Beck's state law claims against them are governed by Oklahoma's Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-72. *See id.* § 153.B; *Rout v. Crescent Pub. Work Auth.*, 878 P.2d 1045, 1049 (Okla. 1994). Any claims under this act must first be presented to the political subdivision, *see id.* § 156.A, and any court action based on the denial of a claim must be initiated within 180 days of the denial of the claim, *see id.* § 157.B. A claim is deemed denied if not approved, denied or settled by the political subdivision within 90 days. *See id.* § 157.A (1999 Suppl.)

The only document that could even liberally be construed as notice to any defendant regarding any of Beck's claims is a letter he wrote to the Muskogee city attorney on March 31, 1997. Because the city did not act on it, the claim is deemed denied 90 days later, around June 30, 1997. Beck then had 180 days to file suit, but he did not do so until nearly a year later, on June 5, 1998. Thus, the

---

[5](...continued)
prejudice. *See Fottler v. United States*, 73 F.3d 1064, 1065-66 (10th Cir. 1996).

We also note that defendant Muskogee County sheriff's office and district attorney's office argue that they are immune from liability under Okla. Stat. tit. 51, §§ 155(2) and 155(23). Section 155 cannot immunize defendants from liability for Beck's § 1983 claims. *See Tiemann v. Tul-Center, Inc.*, 18 F.3d 851, 853 (10th Cir. 1994) ("Conduct by persons acting under color of state law which is wrongful under . . . § 1983 . . . cannot be immunized by state law.") (further quotations omitted).

-14-

Governmental Tort Claims Act's statute of limitations bars all state law claims against defendants.

## Conclusion

To summarize, we conclude that Beck's federal claims for illegal arrest and illegal search and seizure and his state law claims are barred by the applicable statutes of limitations and that his malicious prosecution and *Brady* claims relating to his probation revocation are premature under *Heck.* The malicious prosecution and *Brady* claims as they relate to his dismissed rape charge are neither premature nor barred by the statute of limitations, and may proceed. We cannot determine on the record before us when his due process claim relating to the alleged conversion of his vehicle arose; the district court must determine on remand the timeliness of this claim and whether it too may proceed. Thus, the judgment of the district court is AFFIRMED in part, REVERSED in part, and the case is REMANDED for proceedings consistent with this opinion.